19-5237 Richard Blumenthal, et al. v. Donald J. Trump In his official capacity as President of the United States of America, Appellant Mr. Bupan for the Appellant, Ms. Weiser, the Appellate Mr. Bupan, good morning Good morning, Anna May it please the Court Members of Congress seek to assert an implied cause of action to enforce the Foreign Emoluments Clause against the President of the United States That extraordinary suit should be dismissed because it suffers from multiple fundamental flaws I'd like to begin this morning with Article 3 standing because the members have made several concessions that I submit effectively concede themselves out of court First, the members concede that they cannot assert here any personal injury to their private rights Second, they concede that if they can assert any institutional injuries to their legislative prerogatives they can do so only if they satisfy the two-part test from this Court's decision in Campbell v. Clinton that requires them to show both vote nullification and the absence of legislative remedies I think that that by itself is going to be dispositive in this case because they can't meet either of the two prongs under Campbell itself And moreover, this Court should not apply Campbell and allow federal legislators and indeed a minority of federal legislators to assert Article 3 standing for the first time since Reins If I could start with the... Let me ask you, if a President fails to inform Congress of emoluments what is Congress to do? Well, Your Honor, as the members themselves emphasize the default rule under the Foreign Emoluments Clause is that acceptance of prohibited emoluments is barred absent Congressional consent So they don't need notification unless there are injuries that they wanted to actually consent to the emoluments No, but suppose he doesn't seek consent That's the question. What's Congress's remedy? So, well, there are two points to that, Your Honor The first point is that's not vote nullification That's the exact... No, no, but just stick with the question The question is if... Your view is that the members lack standing and there's no cause of action And Judge Griffith asks, well, then what's the remedy for an emolument clause violation? Presumably the framers who were worried about foreign interference in the government couldn't have imagined, at least I don't think that they added a clause that couldn't be enforced in some way So in your view, how can Congress protect its interests? So in the same exact way that this court identified in Campbell v. Clinton that Congress could identify its interests there, it was the exact same argument that the members of Congress filed suit saying that the President was engaged in armed hostilities and under both the War Powers Act and the Declare War Clause they said that he could not engage in those hostilities without first having obtained consent from Congress And what this court said, I'll skip over the vote nullification point to address your question directly What this court said is that Congress has remedies in that circumstance. First and foremost, of course they could have passed a law banning the President from engaging in that conduct So to here, Congress has wide power From engaging in what conduct? So in this case, the argument The Constitution already regulates that conduct And you're now saying Congress has to do something more than the Constitution? That's the exact same argument that was made and rejected in Campbell The statute here, there is an emolument statute and it lists what Presidents can accept and can't accept Again, Your Honor So it has already passed legislation And just as in Campbell, the argument there was there's both the War Powers Act and the Declare War Clause and the plaintiff's theory of the case was that the President was not allowed to engage in armed hostilities without first receiving consent of Congress And what this court said was the remedy if the President is violating those prohibitions was to pass a statute banning him from engaging in the conduct So to here, Congress has the authority under both the ability to regulate commerce with foreign nations and the Necessary and Proper Clause to say that, for example to be particularly concrete about this they could pass something that said no business in which a federal official who's covered by the Emoluments Clause has a financial interest can receive any money from foreign states Okay, and could these plaintiffs before us today bring that case to challenge it if he refused to do that? In other words, if the President didn't obey it could these plaintiffs in this case sued to force him to? I would think not because that would just be then, as in Campbell they said that would be the President just failing to comply with the federal statute So we're right back where Judge Griffith and I started which is Congress, under your view has no remedy, correct? Well, again Other than, I suppose, impeachment, right? Well, again, I guess I'll say a couple things about this Or is that your view? That this is Congress can enforce this through impeachment? So Congress has other remedies Would you please ask I asked you a question whether your view is that Congress's ultimate remedy here is through impeachment But there happens to be some support in the debates around the Constitutional Convention for that So I'm just asking you whether that's your view So what I will say about that is that this Court in Campbell did recognize that among the tools that Congress has is the ability to remove federal officials I'm not going to take a position today as to whether the allegations here would rise to that level That's just not presented in this case and certainly in Campbell, for example this Court didn't actually go so far as to say that whether or not the conduct there would or wouldn't be an impeachable offense I would also think one of your answers would be Congress has the oversight power but you've, in other cases you've put yourself in a box on that one, right? Well, I would The other, in addition to the legislation That was an argument you refuted or argued against before, right? Because that's what's going on in our Mazar's case, right? One of the arguments supporting the subpoena there is this very Emoluments Clause issue Well, so I would say in addition to the ability to pass legislation which, by the way, I think should just be sufficient under Campbell because it's exactly the same There are other remedies among other things For example, Congress could use its appropriations power What about the oversight power? What's Congress's oversight power with respect to Emoluments Clause? Your Honor, actually, I have to say I haven't actually thought very hard about that question in the context of this case so I hesitate to give an answer to it But, again, if I could circle back to what I started with because I think part of the difficulty here is you're asking to try to find what remedies they have without first starting with what is their actual injury? Because, again, they have to show vote nullification It's not enough to say that there's some alleged violation of the Constitution that they don't have a remedy for That's particularly stark here because, remember, they're only suing over the Foreign Emoluments Clause They're not suing over the Domestic Emoluments Clause The Domestic Emoluments Clause is an absolute prohibition on the President receiving emoluments from either the federal government or any state The reason they're not bringing that claim as other plaintiffs in other cases have is because Congress has no role under the Domestic Emoluments Clause And so they're turning everything on its head because they're saying that they can bring a suit to enforce a qualified prohibition when they couldn't even bring a suit to enforce an absolute prohibition And I think what that shows you is two things One, this focus on whether there is some remedy that Congress can have is just misguided And two, you have to focus on whether there is actually vote nullification within the meaning of cases like Campbell and Raines and Bethune-Hill And what every one of those cases says is that vote nullification is a question about whether there's a dispute about whether the legislature's votes have been there's a question procedurally of what the legislature has done Those cases all reject the notion that you would also find vote nullification not when there's no dispute about what the legislature has done but with respect to how the executive has responded in response to what the legislature has concededly done Take, for example, in Coleman v. Miller The question there was what had the Kansas Senate done? Had they ratified the Constitutional Amendment? Or had they not ratified the Constitutional Amendment? Take, for example, Arizona State Legislature The question was, who is the state legislature? Is it the normal Arizona legislature? Or is it the people of Arizona acting through the commission? That's what vote nullification is Every one of those cases there's essentially an intra-branch intramural dispute within the legislature as to what they had done Had a vote been cast? Or had it not been cast? That's not what's going on here Everyone knows that Congress has not authorized the President to receive otherwise prohibited emoluments The only question in the case is, is the President nevertheless acting lawfully because these aren't actually prohibited emoluments that he needs consent for That is exactly, exactly the same dynamic that was in Campbell If you just substitute military action for the emoluments it's exactly the same The difference here is that Congress doesn't know what's happening, right? Again, Your Honor The nature of the allegations is that there are things taking place that Congress doesn't know about That would only make sense if what they were saying is that they want to actually consent to some emoluments If only they knew they would actually vote to approve them If they hadn't said that I'd be very surprised if counsel stands up here today and says that the reason they brought this suit is they really want to consent to the President receiving some emoluments but they just don't know Does it have to be that? Couldn't it be they want to know about it so they can consider it? No, but that's Again, the default rule is acceptance of prohibited emoluments is not permitted absent Congressional consent So if all they're worried about is that there might be violations they don't have to do anything If they just sit silent as they have there is no consent They want to play a role The Constitution gives them a role That's right They want to play a role That's my point I'm still not clear what you think their role is That's what's so ironic about their position The only role that the Constitution gives Congress with respect to the Foreign Emoluments Clause is to allow them That's the difference between the Foreign Emoluments Clause and the Domestic Emoluments Clause The Domestic Emoluments Clause is a flat prohibition Congress can't even consent to them The Foreign Emoluments Clause Congress can consent to them So I would understand if their argument Is it your understanding that the Foreign Emoluments Clause that Congress can also reject them once they're aware of them? They don't have to reject them is my point The Constitution already rejects them Right? The Constitution already prohibits the acceptance of emoluments absent Congressional consent So unless they're going to stand up here and say that what they really want to do is approve them and that's why they're so injured their argument just doesn't make any sense If I could take a step back So I think I've now hit both of the two reasons why they can't even satisfy Campbell v. Clinton on its own terms They don't have vote nullification and they do have legislative remedies But of course to take a step back the Supreme Court has repeatedly admonished both in footnote 8 of Reins v. Byrd and footnote 12 of Arizona State Legislature that it would pose serious separation of powers concerns to extend the sort of Coleman vote nullification theory to federal legislators And I think that's exemplified by either the last three or four pages of the Reins v. Byrd opinion where the court goes on at some length to describe how there's a long history of inter-branch disputes between the executive branch and the legislative branch and they've never been resolved through lawsuits between the branches They've always been resolved only through if those disputes end up implicating the rights of private parties and private parties have a lawsuit And I think that's very important here that this court should certainly not extend Campbell and for the first time since Reins allow this sort of inter-branch dispute in the face of the unbroken history of not allowing such disputes The last point that we'll make on standing is that's especially true because this isn't even Congress It's not even a House of Congress This is a minority of members of both chambers and we know both from Coleman and from Bethune-Hill that they should not be able if anyone can assert of institutional injury it's got to be the body that has the institutional right and under the Foreign of Monuments Clause the only entity that has any right at all here would be Congress as a whole certainly not individual members and so under Bethune-Hill and under Reins they can't sue even if everything else I said thus far you don't agree with At a minimum, that's true But given what you say in your brief even if they did have standing your view is there's no cause of action, correct? That's true as well, Your Honor and I'm happy to address that if you want that I actually have a question or two about the merits Are you done with the standing though? You okay? Yes Okay I just want to ask you a couple of questions about about your definition of what is an emolument Your position is that it's a payment in exchange for services, right? I think it's profit arising from officer employment Your Honor Yeah, officer employment So So in paragraph 57 of the plaintiff's complaint we allege and this is a motion to dismiss we have to accept this is true they they say that they say that the Saudi government spent $275,000 at Trump hotels and that that money was for lodging for Saudi officials who were lobbying to repeal legislation that allowed American victims of 9-11 to sue the Saudi government Now that's not an emolument under your theory, right? Right Okay But yet if the Saudi government gave the president an expensive gift that would be, correct? Yep So what sense does that make? Why why given the extensive history at the Constitutional Convention that the framers were deeply concerned about foreign interference in the new government Why would we interpret Why would a court interpret the emolument clause that narrowly? Your Honor Why would we do that? So a couple things Yeah The first is no law pursues its purpose at all costs and the textual limits in a law are part of its purpose is no less The emoluments clause What's the answer to my question? Why With all respect, Your Honor I think that is part of the answer You're assuming that this is a provision that's meant to stop any type of enrichment of the president No, that's not what I said over foreign officials No, don't don't don't misstate my question My question is based on the extensive evidence during the Constitutional Convention that the framers were worried about foreign interference and influence in the new government That's one of the reasons They were worried about it in a specific type of way They were worried about it in terms of as they listed out presence emoluments office and title They weren't worried They didn't say any sort of way in which the foreign government could have any sort of influence over a federal official For example they didn't you know prohibit foreign governments from giving money to a federal official's family It says any president emolument officer and title of any kind whatever I don't I don't know that language like that appears anywhere else in the Constitution of any kind whatever That's true but it still has to be an emolument just like in the Supreme Court's decision in Small where it said any court and they said that that doesn't mean foreign courts even if it said any court of any kind whatever the presumption against extraterritoriality would have still told you that that had to be limited to domestic courts because it wasn't clear enough to go as the court has said in cases like Small and Freeman any doesn't change the meaning of the word it modifies The the members brief they cite a a 1993 OLC opinion which involved members of the U.S. Administrative Conference who had been partners in law firms They wanted to know whether partnership distributions from their law firms were emoluments and the court and the OLC said yes So look, Your Honor I think that that is the closest they come I think there are But that's right in point I don't think it's right on point, Your Honor Why is that? Because it involved lawyers and and given the nature of a legal relationship and duties of ethics No, but the members of the the members who asked for the question did not have a client They had done no work That's my point, Your Honor The nature of legal ethics is once you when you're in a partnership even if you're not the precise lawyer working for one of your partner's clients you still have duties to them But the OLC's opinion was that these funds that came to the firm for the work of other partners were attributed to them What's that got to do with the canons of code of ethics? Again, Your Honor I agree that that's the closest they have But let me mention a couple of things that if you take that view of the world here's what follows So first what follows is on their theory let's not forget that the Foreign of Monuments Clause it doesn't it's not limited to the President it applies to all federal all officers holding an office of profit or trust under the United States So on their theory every federal official at the founding who had a private business and that was quite common at the time we didn't have a overarching government bureaucracy and salaried people had side businesses Every single one of them if you had for example an inn you would be required to ask every person who came to your inn by the way are you here from a foreign government on a foreign government expense account and if you are you have to go away That seems utterly implausible Even more implausible is in 1810 Congress overwhelmingly There's no court decisions on that right? I mean we don't know what they thought about that No look that's true that's true but in 1810 Congress overwhelmingly passed and nearly three quarters of the states passed a constitutional amendment that would have extended the foreign ammendment clause to all citizens on pain of losing citizenship So on their theory almost the entire country we came this close to having a constitutional amendment that would have said that if you were an innkeeper and you let a foreign diplomat stay at your inn you lost your citizenship On their theory we almost passed a constitutional amendment that said foreign diplomats couldn't buy food couldn't buy lodging couldn't buy clothing couldn't buy any necessities which I assume would mean you couldn't actually be a foreign diplomat in the United States Again overwhelmingly passed by the federal government and they say it does let's fast forward to today your honor take for example the interest on federal bonds and local bonds that would clearly violate the domestic ammendment clause on their theory it is profit coming directly from the federal government or the OLC opinion distinguishing that what would we say how would we say that doesn't so what I would say is two things proposition one is that the meaning of the term is profit from office or employment is profit from office or employment and proposition two would be but that's not what the OLC opinion says so you're saying the OLC opinion is wrong well no what I was going to say is proposition two is in the context of a law firm partnership you can view any partner as being employed by any firm client that is the best way to understand the OLC opinion in light of all the historical stuff I just said you may know the details of it better than I do I don't have it in front of me but is that the reason the OLC opinion no it doesn't say that your honor but again I don't think you can construe it if you construe it the more broad way that your honor suggested it would have all the consequences I just said it's just utterly implausible to read that term to have those consequences to say that virtually every president recently has probably violated the domestic emoluments clause merely because they have treasury bills in place to enforce the term emoluments we'll give you some time in response Ms. Wadra good morning may it please the court I'd like to pick up on the colloquy that judge Tatel had with my friend on the other side the foreign emoluments clause is not a constitutional cabinet of the king of Siam to president Lincoln but throwing open the door to potential foreign corruption when that influence is a conduit of vast international business relationships that simply does not make sense when you think of the important anti-corruption purposes that drove the founders in the first place to put the foreign emoluments clause into the constitution. From the remedies that my friend suggests, you might think that the foreign emoluments clause was written to allow any emolument unless Congress can first ferret out that emolument and then affirmatively pass legislation to prohibit it. Before we get to that, I'd like you to address the standing issue. You are not here representing the House of Representatives, are you? Your Honor, we represent individual members of  You are not here representing the House of Representatives, correct? Correct. We represent individual members. You are not here representing the Senate of the United States.   members.    Representatives. You are not here representing the Senate of the United States. No, we are not. This case is like Coleman, where it is an institutional injury, not the personal type of injury. You have to say it's like Coleman because if we're going to follow our own precedent, if we're going to follow Reins, that's the only type of standing a legislator can have. A legislator invokes institutional interest. You have to fit within Coleman, right? Your Honor, yes, we do fit within Coleman, within Reins. How do you fit within Reins? Let's look at the way Reins describes Coleman. Would you start there and then go to ours? Your Honor, in Reins, they explained that vote nullification involves not giving full effect to the particular votes of legislators. In that case, it was distinct because their votes were much more like Coleman because the individual members that I represent have been completely denied a vote to which they are explicitly entitled under the Foreign Emoluments Clause, and that is a vote before the fact, on the record, binding the President, before he accepts any Foreign Emoluments. I thought Reins interpreted Coleman to say very unique facts there, right? Yes. Because of the vote nullification, the outcome was different, right? It was 50-50 in the Kansas legislature. The Lieutenant Governor cast the deciding vote. The question was whether the Lieutenant Governor had the authority to do that or not, and if he had the authority to do that, which apparently the Supreme Court said he didn't, then the votes of 50 of the State Senators were completely nullified. How do you have anything like that here? Chief Justice Rehnquist went to great lengths to say in Coleman the key fact was that you had a number of legislators whose votes would have swung the outcome in a different fashion. You don't have anything like that here. Your Honor, I would respectfully disagree, and I think that if you look at the ways in which the individual members' votes are nullified here, you can see how they're nullified in two different ways. First, the individual members' votes are nullified in the future. Here, also, the votes of the individual members are nullified in the future. The President, because he does not believe that he is accepting prohibited emoluments, is clear that he will not come to Congress to get their consent before accepting them. Therefore, both with respect to the ongoing violations and in the future, there is no vote. As I read what Chief  was saying, vote nullification wasn't simply the idea that an individual legislator didn't have a chance to act on a matter, but that the group nullification made a difference. There was a majority that had voted differently. That's what I'm saying. You don't have that here. Oh, yes, I see, Your Honor. I think that that's relevant in Coleman because of the particular species of vote nullification at issue in that case, where there was a majority    chance to act on a matter. Chief Justice Rehnquist said that was a critical part of the decision. That's part of what vote nullification meant. It changed the outcome. In Coleman, yes, because of that specific variety of vote nullification, overriding a past vote. But here, where we're talking about denying the vote completely... But Chief Justice Rehnquist was commenting, was using that to describe in Reigns why there wasn't any standing. He wasn't just confining it to Coleman. He was saying this is the principle. So, Your Honor, they also said in Reigns that the Foreign Emoluments Clause guarantees to individual legislators a specific vote. And it is that vote that is being completely devoid of effect. There is no vote being allowed that is explicitly entitled to these members under the Constitution. The default rule is that Congress by in action, because of the default rule of the Foreign Emoluments Clause, can in that way deny consent. And this is important to the operation of the rule. And my friend on the other side would turn the clause on its head by essentially shifting the default rule and saying Foreign Emoluments can be accepted unless Congress says they can't. That's not the way the Constitution is written. Before you go to the merits, though, this is an interesting debate you're having about what Reins and Coleman means. But I want to read you a sentence from Virginia House of Delegates, which is the most important  in the Constitution. She said, there's a mismatch in that      and the body to which the relevant Constitution is intended. She said, there's a mismatch in that case between the body seeking to the constitutional interest protects. And we are, this is, the Constitution calls us an inferior court. Why are we just completely bound by language like that in this case? What that says to me is that individual members of a legislature cannot sue to represent the interests of the legislature as a constitutional interest. Even if I thought your interpretation of Reins and Coleman was correct, what do we do with this language? So, Your Honor, that is a very critical point. Right, that's why I asked. Yes, good question. We completely agree with you that when you're talking about a diminishment of legislative power in some way Don't talk about diminishment, just talk about this language. We have so many cases that say this is the kind of language in a Supreme Court case that binds, that we as a lower federal court are bound by. Your arguments about Reins and Coleman are interesting, but given what the   has to say, you better take your argument to the Supreme Court and ask them what this sentence, what the implications of this sentence are for Reins and Coleman. Do you see my point? I absolutely do. This is just a question from the perspective of this inferior court. That's it. That's my question. I think that that language would be much tougher for us if we were seeking to vindicate any other clause because it specifically contemplates a specific vote for members of Congress before the President can do something. The consent of Congress and Congress gives its consent through the votes of its individual members. You're not Congress. You're not here representing Congress. We are here representing the individual members who will give their consent. The Supreme Court has told us you're only supposed to listen to you on things like this if you're representing Congress. So go back, get a resolution from the House and the Senate. They do it all the time and then come and then you can speak for Congress but until then you can't. I think that's the thrust of the argument. Your Honor, I don't think that's true when you raise the particular type of vote nullification claim that we are raising here and that was raised in Coleman. And the reason that it's important here is because what we are seeking is a vote. Is that what Justice Ginsburg said, that her reasoning and the Court's reasoning applied simply to that set of facts? Your Honor, not in Bethune Hill, that wasn't a vote nullification case. It's a more fundamental issue here and that is you're not here representing Congress so you can't seek to nullify it. This Court has been very careful to preserve an admittedly narrow window but not an impenetrable window of legislator standing for an individual asserting an institutional injury when there has been complete vote nullification and there are no adequate legislative remedies. And that is exactly the case we have here. We are seeking, as Your Honor said, a vote that allows Congress to consider and maybe consent or not consent to foreign emoluments before they are accepted. That is the rule that is explicitly set down in the Constitution. And here I think we have, there are two ways in which the foreign emoluments clause works. It sets this very broad and sweeping default rule that no emoluments shall be accepted unless Congress consents. First of all, that would be rewriting the foreign emoluments clause. Secondly, my friends say in other litigation that oversight over the foreign emoluments clause is illegitimate. Putting that  place. The way Congress believes its anti-corruption aims is by having, at the time of the founding, this was incredibly important, the person who wants to accept foreign rewards, lay them before Congress, ensure accountability and transparency and thus remove the potential foreign corruption by putting them before Congress. Here we have the unique situation of the president accepting foreign emoluments. While there were adequate legislative remedies in Campbell and Chenoweth, that is not the case here. We're talking about a constitutional violation that would require him to essentially tie his own hands or would require super majorities in Congress to pass veto proof legislation. That would essentially twist the Constitution to a degree that the foreign emoluments clause becomes unrecognizable. I just want to make sure that we get back to the vote nullification claim because I think we both agree that the two part test of Campbell applies here. The key language in Campbell when it is describing the vote nullification basis for standing that remains good law after the Supreme Court cases that we discussed is when a vote is treated as if it has not passed or vice versa. The President by accepting foreign emoluments when Congress has not consented is   law. I'm sorry to obsess about this sentence but I still haven't heard from you how we deal with that in this case. It says, the way I read that, it says an individual member lacks standing to assert the interests of a legislature. That's what that says. An individual member lacks standing to assert the interests of a legislature. And the foreign emoluments clause says that they can't accept emoluments without the consent of Congress. Congress only  through a vote of a majority of both houses of Congress. And this case is even easier than House of Delegates because at least in that case you had one house suing. And that wasn't enough. Here you don't even have one house. So I still need an explanation of how the institutional interests of the legislature is different than in any of these other cases. What's your best argument  that? Your Honor, so I think that they are distinguishable because in Bethune Hill and in Raines there was a diminishment of legislative authority that is different from a specific vote explicitly guaranteed in the Constitution being denied to the individual members. And the way that Congress  that is it requires a general  of authority to legislate on the issue of emoluments. I agree with you that in that case it would be something that might be better pressed by the bodies themselves. Of course then you might have some other issues of adequate legislative remedies. So I want to emphasize just how narrow the rule we are seeking here is. It falls in line with the way that the court described vote nullification in Campbell. A specific vote to which individual members are entitled that they are being denied completely. That is being treated as if it passed when it hasn't or will be nullified in the future. That is a rule that has been reaffirmed by the Supreme Court in Arizona state legislature. The court did not overrule it. You are saying there is a category of legislative standing that falls outside of Justice Ginsburg's language. Absolutely. This court did not say that no individual member could not press an institutional injury. If they did, that opinion would have been much shorter. It is not the rule. The courts have narrowed  standing. This court and the Supreme Court have been careful to preserve the situation where there are no adequate legislative remedies. That is why  asking the Supreme Court  allow this case to proceed. Thank you. Why don't you take two minutes? I will try to squeeze four quick points. The narrowest way to resolve this case is the mismatch. Bethune Hill and Raines both made clear that at a minimum you have to be the body that has the institutional right. They said it was a block of voters in Coleman that were basically saying they were suing as the Kansas Senate. For purposes of that issue they were the Kansas Senate. Once you realize that you realize why it is a big deal and why it is a problem to extend that theory to federal legislators. It is one thing for the Supreme Court to say the Kansas Senate can bring a lawsuit. It is another thing  Supreme Court to say even if you focus on vote nullification I didn't hear any answer today as to why this is any different than Campbell. In Campbell the plaintiffs argued that both the declare war clause and war powers resolution required consent of Congress and this court said that was neither nullification and legislative remedies. It was the same exact thing. They had the ability to consent and the President was engaged in conduct. Here is what troubles me about your position. It seems to me if you were right about standing it does raise the question of what is the remedy for alleged violations of the clause. It seems to me one easy answer to that is congressional oversight. You are resisting that in other cases. You are saying  oversight is inappropriate. What is Congress to do in a case where it has reasons to think the emoluments clause is being violated? I will say a couple of things.  Congress has no standing to bring that suit. You know there may not be a remedy Congress can bring a lawsuit over. In terms of what the remedies are, Congress can pass a law. Just like in  case where the justice department is doing with respect  emoluments. Congress can't act or shouldn't act without evidence. Presumably to be able to pass an emolument clause it would have to understand exactly what is happening. To   emolument clause there is no impediment to Congress passing a law that says any federal official covered by the clause if they have a financial interest in a business that business can't do business with foreign states. That is their legal position. They can do that but without an investigation. If Congress as a whole. Stick with my question. I'm asking you how if Congress thought it would be helpful before it passed that legislation to have a hearing and investigate to summon witnesses and issue subpoenas it couldn't do that under the Justice Department's view. We just have to pass the law. Is that right? Your Honor, we haven't briefed any of the issues about oversight in this case. I'm asking you based on this because this is the position the Justice Department is taking. The oversight issues are complicated. I hesitate to answer a question here. It is not complicated to understand the position of the Justice Department in Trump versus Mazars. They are members of Congress. If Congress as a whole agreed with them that it is a problem for someone covered by the emoluments clause to have a business where foreign governments patronize foreign  If Congress agrees with them they can pass it. You don't  investigate. If you don't want to answer the question that's fine. Given the position of the Department of Justice in other litigation Congress would have to pass that law without having an investigative hearing. Correct? Your Honor, I'm not sure. The answer is really and honestly I'm not sure. I haven't thought about it in the context of this case. The fourth and final  is that the President of the United States has to pass a statute that authorizes a suit against the President of the United States. In light of the separation of powers concerns you would need an investigative hearing.     United     a statute against the President of the United States, you would need an investigative hearing. If the President of            United States, you would need an investigative hearing. If the President of the United States has to pass a statute against the             the United States has to pass a statute against the President of the United States, you would need an investigative hearing.
judges: Henderson, Tatel, Griffith